**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
SOUTHWESTERN DIVISION**

| | | |
|---|---|---|
| Thomas H. Bray, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | **ORDER GRANTING** |
| vs. | ) | **DEFENDANTS' MOTIONS FOR** |
| | ) | **SUMMARY JUDGMENT** |
| Bank of America, MERS, Inc., and | ) | |
| Countrywide Home Loans, | ) | Case No. 1:09-cv-075 |
| | ) | |
| Defendants. | ) | |
| ———————————————— | ) | |
| | ) | |
| Countrywide Home Loans; Bank of | ) | |
| America; and MERS, Inc., as a nominee | ) | |
| of America's Home Loans LLC, its | ) | |
| successors and assigns, | ) | |
| | ) | |
| Counter Claimants, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| Thomas H. Bray, individually and as | ) | |
| alleged Trustee of Multigrain CPT a/k/a | ) | |
| Multigrains CPT; Michael D. Harris, | ) | |
| Trustee of Bray 10 Family Trust; Ken | ) | |
| Campbell, a/k/a Kenneth Campbell; | ) | |
| Sharenda Bray Wiebe; Devin Bray; and | ) | |
| Portfolio Recovery Associates, | ) | |
| | ) | |
| Counter Defendants. | ) | |

Before the Court are the Plaintiff's Motion for Summary Judgment, "Motion to Cease &

Desist with Intent to Sue & Affidavit in Support of in Response to Counterclaim of MERS as a

Nominee of America's Home Loans LLC, it's Successors & Assigns, Including Bank of America

& Countrywide Home Loans," "Verified Motion for Summary Judgment Brief Included," "Motion

to Find Judgment in Favor of Plaintiff Based on Fraudulent Contract," "Amended Verified Motion

for Summary Judgment Brief Included," "Verified Motion to Find Summary Judgment in Favor of

Plaintiff Based on Ultra Vires, TILA, RESPA, RICO, Usury Laws, & Federal Reserve Regulation Z Violations," "Amended: Motion to Find Judgment in Favor of Plaintiff Based on Fraudulent Contract," Amended Motion for Summary Judgment, "Request for Thirty (30) Day Extension for Purpose of Getting Expert Witness Affidavit/Testimony Third Party Plaintiff's Expert Witness Resume Attatched," and "Writ for Information Based on Freedom of Information Act." See Docket Nos. 34, 55, 60, 61, 71, 72, 77, 81, 140, and 175 (errors in originals). Also before the Court are the Defendants' and Counter Claimants' "Motion for Summary Judgment Dismissing Plaintiff's Claims" and "Motion for Summary Judgment on Counterclaim." See Docket Nos. 141 and 142. For the reasons set forth below, the Plaintiff's motions are denied and the Defendants and Counter Claimants' motions are granted.

## I.   **BACKGROUND**

On March 1, 2006, the plaintiff, Thomas H. Bray, obtained a loan from America's Home Loans, LLC, ("AHL") for $ 220,000. See Docket No. 44-1. The loan was evidenced by an adjustable rate note and secured by a mortgage. See Docket Nos. 44-1 and 44-2. According to the mortgage, "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for the lender and the lender's successors and assigns. MERS is listed as the mortgagee on Bray's mortgage. See Docket No. 44-2. The proceeds of the loan were distributed to Security State Bank in the amount of $ 132,301.60, Richard Dietrich in the amount of $ 5,520.66, Bray in the amount of $ 66,827.82, and $ 15,349.92 was used to pay settlement charges owed by Bray. See Docket No. 1-6, p. 28. Bray testified in a deposition that he used the funds he received to pay his living expenses. See Docket No. 144-1, p. 10.

Luis R. Ruano II, the Litigation Specialist for BAC Home Loan Servicing, LP ("BAC"), which is a subsidiary of Bank of America ("BOA") testified in an affidavit that the note was transferred as follows:

> 4.     America's Home Loans LLC assigned the Note to Decision One Mortgage by an Allonge to Note . . . .

> 5.     On May 2, 2006, Decision One Mortgage Company, LLC ("Decision One") transferred its servicing rights with respect to the Note and Mortgage to BAC. On May 2, 2006, Decision One also transferred its beneficial ownership in the Note to BAC.

> 6.     On May 30, 2006, BAC transferred its beneficial ownership in the Note to The Bank of New York Mellon.

> 7.     BAC currently is the servicer of the Note and the Mortgage. The original Note and Mortgage is in the possession of the Vogel Law Firm. At the time BAC began servicing the Note and the Mortgage there was no default under the Note or the Mortgage.

<u>See</u> Docket No. 147. Jennifer Guidicessi, Vice President of MERS, testified in an affidavit:

> 2.     MERS is named as the mortgagee on Mr. Bray's mortgage. It holds legal title to the security instrument and does so as nominee for the original lender and its successors and assigns.

> 3.     MERS is and at all time has been the record titleholder of a Mortgage executed by Mr. Bray in favor of MERS as nominee for America's Home Loans, LLC and its successors and assigns dated March 1, 2006 . . . .

> . . . .

> 5.     The Note was endorsed in blank by Decision One Mortgage Company, LLC (the assignee of America's Home Loans). I have personal knowledge of the location of the Note, and although physically in the possession of counsel for this matter, the Note is under my control. MERS records show that the Bank of New York Mellon, N.A. is the current beneficial owner of the Note.

<u>See</u> Docket No. 151. The Allonge to Note states:

> FOR VALUABLE CONSIDERATION, the undersigned hereby endorses without recourse to: Decision One Mortgage Company LLC

3

> All of his/her rights, title and interest in and to the attached Note dated **MARCH 1, 2006** in the amount of **$220,000.00**.  The Borrower(s) in said Note are: **THOMAS H. BRAY**.  Said Note is secured by a Mortgage/Deed of Trust of the same date on real property located at: **105 MULBERRY LANE, BISMARCK, NORTH DAKOTA 58501**.

<u>See</u> Docket No. 144-2, p. 5 (emphasis in original).  The Allonge to Note is signed by Ruth Hart, Closing Funding Coordinator, on behalf of AHL.  The Note is stamped with the following endorsement:

Without Recourse
For valuable consideration
Decision One Mortgage Company, LLC
Assigns all rights, title and interest to
_____

<u>See</u> Docket No. 44-1.  The endorsement is signed by Pat Stowe, Assistant Secretary, on behalf of Decision One.

Bray filed a "Verified Complaint for Quiet Title and an Order of Cease and Desist" in Burleigh County District Court on October 26, 2009.  <u>See</u> Docket No. 1-5.  Bray sought "to quiet title to land and buildings situated at 105 Mulberry Lane, Bismarck, North Dakota."  <u>See</u> Docket No. 1-5, p. 3.  The Defendants removed the case to federal district court on November 17, 2009.  <u>See</u> Docket No. 1.

In his complaint, Bray states:

> [W]hen a bank loan transaction is entered into bank deposits are placed in a transaction account in the name of the borrower in exchange for the promissory note. This proves that the loan is a mutual loan between the lender and the borrower and that the borrower funds his own loan with the promissory note.  The Defendants, in this matter have not incurred a financial cost or damages by my failure to pay the alleged balance due on the note in this matter.  When the Defendants created the alleged money . . . it did not cost them anything.

4

See Docket No. 1-5, pp. 15-16 (ellipses in original).  Bray contends further that United States

currency has no value:

> All bank loans in the continental United States are fraudulent in their very nature
> because the Federal Reserve Notes are only based upon book keeping entries by the
> bankers and represent no value, no valuable consideration and no pledging of the
> banks assets.  The original mortgage is therefore chattel paper with no valuable
> consideration and therefore the whole mortgage contract is based upon fraud and a
> lack of valuable consideration since Federal Reserve Notes have no intrinsic value
> whatsoever, and are just bookkeeping entries under the 1933 bankruptcy [of the
> United States government].

See Docket No. 1-5, pp. 17-18 (errors in original).

Bray asserts he has "allodial" title to the real property in question and the Defendants have

no legal interest in the property.  See Docket No. 1-5, p. 33.  Bray also claims the Defendants have

violated the Fair Debt Collection Practices Act ("FDCPA"), the Truth in Lending Act ("TILA"), and

the Real Estate Settlement Procedures Act ("RESPA").  As relief, Bray requests that the Court order

the Defendants to cease and desist any foreclosure proceedings or collection of the mortgage debt,

to remove the property from any list of assets, and for a declaratory judgment that no claim to the

property exists superior to Bray's.  Bray also requests  damages in the amount of three times the

original mortgage plus interest and expenses.

On January 26, 2010, MERS and BAC sent Bray a "Notice Before Foreclosure," informing

him that, unless the mortgage was brought current, they would commence foreclosure proceedings

in thirty days.  See Docket No. 44-3.  On April 12, 2010, the Defendants filed a counterclaim.  See

Docket No. 44.  The Defendants request a monetary judgment against Bray in the amount of

$ 229,289.74 with additional interest of $ 49.2557 per day; a declaration that the mortgage and note

are valid liens on the property; a decree of foreclosure; a decree of sale of the property; a declaration

that all persons claiming an interest in the property "shall forever be barred and foreclosed of all

right, claim, lien and equity of redemption in subject property, and all proceeds of the property and

every part thereof, except the right of redemption given by law;" and costs and fees. <u>See</u> Docket No.

44.

On September 3, 2010, the Defendants filed motions for summary judgment on Bray's claims

and their counterclaim and a single response to all of Bray's motions that had been filed at that time.

<u>See</u> Docket Nos. 141, 142, and 144. In their response, the Defendants summarize Bray's claims as

follows:

> (1) the Mortgage is invalid on account of the beneficial owner of the Note not being
> the record owner of the Mortgage; (2) MERS and/or the other Defendants failed to
> produce the "wet ink" originals of the Note and the Mortgage and that the Note and
> the Mortgage are therefore unenforceable; (3) Defendants violated the Fair Debt
> Collection Practices Act by failing to verify the debt; (4) the Note and the Mortgage
> fail for lack of consideration; (5) Mr. Bray exercised his right of rescission under the
> Truth in Lending Act; (6) Defendants violated applicable usury laws; (7) Defendants
> committed ultra vires acts; (8) Defendants violated the Racketeer Influenced and
> Corrupt Organizations Act; (9) fraud; (10) the law of acquiescence; and (11)
> violations of the Real Estate Settlement Procedures Act.

<u>See</u> Docket No. 144, pp. 8-9. The Court has reviewed the entire record and believes the Defendants'

characterization of Bray's claims to be accurate. In addition, Bray claims that he owns "allodial"

title to the property. The Defendants contend that summary judgment in their favor is appropriate

because there are no genuine issues of material fact, that Bray's claims are without merit, and the

Defendants are entitled to judgment as a matter of law.


## II.   <u>STANDARD OF REVIEW</u>

Initially, the Court notes that Bray is appearing pro se. Pro se litigants are held to lesser

pleading standards than other parties and pro se complaints are to be liberally construed. <u>Whitson</u>

<u>v. Stone Cnty. Jail</u>, 602 F.3d 920, 922 n.1 (8th Cir. 2010). Summary judgment is appropriate when

the evidence, viewed in a light most favorable to the non-moving party, indicates that no genuine issues of material fact exist and that the moving party is entitled to judgment as a matter of law. Davison v. City of Minneapolis, Minn., 490 F.3d 648, 654 (8th Cir. 2007); Fed. R. Civ. P. 56(c). Summary judgment is not appropriate if there are factual disputes that may affect the outcome of the case under the applicable substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). An issue of material fact is genuine if the evidence would allow a reasonable factfinder to return a verdict for the non-moving party. Id.

The Court must inquire whether the evidence presents a sufficient disagreement to require the submission of the case to a factfinder or whether the evidence is so one-sided that one party must prevail as a matter of law. Diesel Mach., Inc. v. B.R. Lee Indus., Inc., 418 F.3d 820, 832 (8th Cir. 2005). The moving party bears the burden of demonstrating an absence of a genuine issue of material fact. Simpson v. Des Moines Water Works, 425 F.3d 538, 541 (8th Cir. 2005). The non-moving party "may not rely merely on allegations or denials in its own pleading; rather, its response must . . . set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). The court must consider the substantive standard of proof when ruling on a motion for summary judgment. Anderson, 477 U.S. at 252.

## III.   LEGAL DISCUSSION

### A.   OWNERSHIP OF THE NOTE AND MORTGAGE

Bray contends that MERS cannot foreclose on the property because MERS does not own the note. The Defendants contend MERS can foreclose on the property because it is the mortgagee of record and is acting as the nominee for the original lender's successors and assignees. The note

7

states underneath the heading "Borrower's Promise to Pay," "I understand that the Lender may transfer this Note.  The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the 'Note Holder.'"  See Docket No. 44-1.  Bray admitted during a deposition that he signed the note.  See Docket No. 144-1, p. 8.  America's Home Loans transferred the note to Decision One.  Decision One endorsed the note in blank.  MERS asserts that it controls the note and mortgage.  The Court must determine whether MERS, by virtue of its possession of both the note and the mortgage, has standing to foreclose.

North Dakota's version of the Uniform Commercial Code is codified in title 41 of the North Dakota Century Code.  N.D.C.C. § 41-03-23(1) (U.C.C. § 3-204) defines "endorsement":

> "Endorsement" means a signature, other than that of a signer as maker, drawer, or acceptor, that alone or accompanied by other words is made on an instrument for the purpose of negotiating the instrument, restricting payment of the instrument, or incurring endorser's liability on the instrument regardless of the intent of the signer, a signature and its accompanying words is an endorsement unless the accompanying words, the terms of the instrument, the place of the signature, or other circumstances unambiguously indicate that the signature was made for a purpose other than endorsement. . . .

N.D.C.C. § 41-03-24 (U.C.C. § 3-205) defines special and blank endorsements:

> 1.  If an endorsement is made by the holder of an instrument, whether payable to an identified person or payable to bearer, and the endorsement identifies a person to whom it makes the instrument payable, it is a "special endorsement".  When specially endorsed, an instrument becomes payable to the identified person and may be negotiated only by the endorsement of that person. . . .
>
> 2.  If an endorsement is made by the holder of an instrument and it is not a special endorsement, it is a "blank endorsement".  When endorsed in blank, an instrument becomes payable to bearer and may be negotiated by transfer of possession alone until specially endorsed.

(Emphasis added).  N.D.C.C. § 41-03-27 (U.C.C. § 3-301) specifies who is entitled to enforce an instrument:

"Person entitled to enforce" an instrument means the holder of the instrument, a nonholder in possession of the instrument who has the rights of a holder, or a person not in possession of the instrument who is entitled to enforce the instrument . . . .  A person may be a person entitled to enforce the instrument even though the person is not the owner of the instrument or is in wrongful possession of the instrument.

N.D.C.C. § 35-03-01.2 provides, "The assignment of a debt secured by a mortgage carries the security with it."  Prior to the establishment of the North Dakota Century Code, the North Dakota Supreme Court held that the assignment of a note also transfers the mortgage.  See Clark v. Henderson, 244 N.W. 314, 317 (1931) ("No formal assignments of the mortgages were necessary. When the indorsed notes were delivered to the Kenmare bank they carried with them their security"); Thompson v. State Bank of Lisbon, 225 N.W. 788, 789 (1929) ("The note carried with it the mortgage, though no reassignment thereof was executed and delivered").

The Court finds as a matter of law that MERS is able to enforce the note and has standing to foreclose.  The note was properly transferred to Decision One by America's Home Loans.  When Decision One endorsed the note in blank, it became payable to its bearer and could be transferred by possession alone.  According to the affidavit of Jennifer Guidicessi, Vice President of MERS, the Vogel Law Firm is in possession of the note on MERS' behalf.  See Docket No. 151.  Bray, or someone on Bray's behalf, has inspected the original note and mortgage at the Vogel Law Firm's offices.  See Docket No. 144-1, p. 14.  MERS' possession of the note gives it the authority to enforce the note.  MERS is also the named mortgagee on the mortgage.  Even if ownership of the mortgage passed with ownership of the note pursuant to N.D.C.C. § 35-03-01.2, MERS' possession of the note would give it ownership of the mortgage.  The Court finds as a  matter of law that MERS owns both the note and the mortgage and thus can foreclose on the real property in question.

The "Notice Before Foreclosure" sent to Bray on January 26, 2010 states that, as of January 28, 2010 he owed $ 227,467.28 on the mortgage and that the mortgage was in default. See Docket No. 44-3. Bray has not specifically disputed the amount he owes on the mortgage. He admitted in his deposition that he has not made a mortgage payment since June 9, 2009. See Docket No. 144-1, p. 16. The Court finds as a matter of law that Bray's mortgage is in default and MERS has the power to foreclose on the mortgage. Accordingly, the Defendants' "Motion for Summary Judgment on Counterclaim" is granted. See Docket No. 142.

### B. "WET INK" ORIGINALS OF THE NOTE AND MORTGAGE

Bray contends the Defendants cannot proceed with a foreclosure action because they have not produced the original note and mortgage which he refers to as the "wet ink" originals. The record reveals that Bray was presented with the original note and mortgage at a deposition and two of his associates were allowed to inspect the note and mortgage prior to the deposition. See Docket No. 144-1, pp. 13-14. Without deciding whether it was necessary for the Defendants to produce the original note and mortgage, the Court finds that they have done so.

### C. FAIR DEBT COLLECTION PRACTICES ACT

Bray contends the Defendants have violated the Fair Debt Collection Practices Act because they are attempting to collect on a debt that has not been validated. 15 U.S.C. § 1692g provides, in part:

> (a) Notice of debt; contents. Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing –

(1) the amount of the debt;

(2) the name of the creditor to whom the debt is owed;

(3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;

(4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and

(5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

(b) Disputed debts.  If the consumer notifies the debt collector in writing within the thirty-day period described in subsection (a) that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector. . . .

Bray contends the Defendants cannot collect on the loan because they have not verified the debt after he requested they do so.  The Defendants contend that, pursuant to 15 U.S.C. § 1692a, they are not subject to the Fair Debt Collection Practices Act.  Section 1692a(6) provides, in part:

The term "debt collector" means any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Notwithstanding the exclusion provided by clause (F) of the last sentence of this paragraph, the term includes any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts.  For the purpose of section 808(6), such term also includes any person who uses any instrumentality of interstate

11

commerce or the mails in any business the principal purpose of which is the enforcement of security interests. <u>The term does not include</u>–

. . . .

    (F)    any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity (i) is incidental to a bona fide fiduciary obligation or a bona fide escrow arrangement; (ii) concerns a debt which was originated by such person; (iii) <u>concerns a debt which was not in default at the time it was obtained by such person</u>; or (iv) concerns a debt obtained by such person as a secured party in a commercial credit transaction involving the creditor.

15 U.S.C. § 1692a(6)(F) (emphasis added).

    The Court finds as a matter of law that the Bank of America is not subject to the Fair Debt Collection Practices Act.  The Bank of America, through BAC Home Loan Servicing, is the servicer of the mortgage.  <u>See</u> Docket No. 147.  The United States District Court for the District of Minnesota has explained, "[A] debt collector does not include the consumer's creditors, *a mortgage servicing company*, or an assignee of a debt, as long as the debt was not in default at the time it was assigned."  <u>Motley v. Homecomings Fin., LLC</u>, 557 F. Supp. 2d 1005, 1009 (D. Minn. 2008) (quoting <u>Thulin v. EMC Mortg. Corp.</u>, Civ. No. 06-3514, 2007 U.S. Dist. LEXIS 76864, 2007 WL 3037353, at *5 (D. Minn. Oct. 16, 2007)) (emphasis in original).

    The Court also finds as a matter of law that MERS is not subject to the Fair Debt Collection Practices Act.  The United States District Court for the District of Minnesota has noted, "The Eighth Circuit has not addressed whether foreclosure activities constitute debt collection under the FDCPA."  <u>Gray v. Four Oak Court Ass'n</u>, 580 F. Supp. 2d 883, 887 (D. Minn. 2008) (citing <u>Cohen v. Beachside Two-I Homeowners' Ass'n</u>, Civ. No. 05-706, 2006 U.S. Dist. LEXIS 44978, at *28-29 (D. Minn. June 29, 2006)).  In <u>Gray</u>, the district court concluded foreclosure activities are not debt

12

collection, as contemplated by the Fair Debt Collection Practices Act.  Id. at 888.  The district court

explained:

> [T]he statute's definition of a "debt collector" clearly reflects Congress's intent to distinguish between "the collection of any debts" and "the enforcement of security interests." 15 U.S.C. § 1692a(6).  The first sentence of that definition defines a debt collector as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."  Id.  § 1692a(6).  The third sentence of § 1692a(6) provides that for purposes of § 1692f(6), a debt collector is also "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests."  If a party satisfies the first sentence, it is a debt collector for purposes of the entire FDCPA.  See Kaltenbach [v. Richards], 464 F.3d [524,] 529 [5th Cir. 2006)].  If a party satisfies only the third sentence, its debt collector status is limited to § 1692f(6).  However, if the enforcement of a security interest was synonymous with debt collection, the third sentence would be surplusage because any business with a principal purpose of enforcing security interests would also have the principal purpose of collecting debts.  Therefore, to avoid this result, the court determines that the enforcement of a security interest, including a lien foreclosure, does not constitute the "collection of any debt."  See Jasa v. Millard Pub. Sch. Dist. No. 17, 206 F.3d 813, 815 (8th Cir. 2000) (noting "principle of statutory construction that avoids creating mere surplusage").

Id. at 887-88.  The Court agrees with the Gray court's interpretation of the statute.  The Court finds

as a matter of law that the foreclosure activities MERS has engaged in are not debt collection and

therefore, MERS is not subject to the Fair Debt Collection Practices Act.

The Court further finds as a matter of law that America's Home Loans is not subject to the

Fair Debt Collection Practices Act.  The definition of a "debt collector" excludes one who is

collecting a debt that was originated by that person or entity.  15 U.S.C. § 1629a(6)(F)(ii).

America's Home Loans originated the loan to Bray.  Therefore, any attempt America's Home Loans

may have made to collect on the debt did not bring it under the Fair Debt Collection Practices Act.

The Court expressly finds as a matter of law that none of the named Defendants are subject to the Fair Debt Collection Practices Act.


### D.      CONSIDERATION

Bray contends that no consideration existed for the original loan transaction.  He explains in his complaint:

> [T]here is no valuable consideration, since only Federal Reserve Notes were received, which _are not_ backed by any hard asset of the bank or anything which has any redemption value.  I do not remember ever signing over a security interest, _based on valuable consideration_ to the defendants or anyone else.

See Docket No. 1-5, p. 26 (italics and emphasis in original).  Bray's argument that federal reserve notes have no value is patently frivolous.  The record is clear that Bray received a loan for $ 220,000.  From this amount, he received a check for $ 66,827.82, which he used to pay living expenses.  Bray's argument that the loan transaction was invalid for lack of consideration is devoid of merit and lacks any support in existing statutory law or case law.


### E.      TRUTH IN LENDING ACT

Bray also argues that he has exercised his right of rescission under the Truth in Lending Act. The regulations implementing the Act are found in Title 12, Part 226 of the Code of Federal Regulations.  12 C.F.R. § 226.15 provides for the consumer's right of rescission:

> (a) _Consumer's right to rescind_.
>
>> (1)(i) Except as provided in paragraph (a)(1)(ii) of this section, in a credit plan in which a security interest is or will be retained or

acquired in a consumer's principal dwelling, each consumer whose ownership interest is or will be subject to the security interest shall have the right to rescind: each credit extension made under the plan; the plan when the plan is opened; a security interest when added or increased to secure an existing plan; and the increase when a credit limit on the plan is increased.

      (ii) As provided in section 125(e) of the Act, the consumer does not have the right to rescind each credit extension made under the plan if such extension is made in accordance with a previously established credit limit for the plan.

(2) To exercise the right to rescind, the consumer shall notify the creditor of the rescission by mail, telegram, or other means of written communication. Notice is considered given when mailed, or when filed for telegraphic transmission, or, if sent by other means, when delivered to the creditor's designated place of business.

(3) <u>The consumer may exercise the right to rescind until midnight of the third business day following the occurrence described in paragraph (a)(1) of this section that gave rise to the right of rescission, delivery of the notice required by paragraph (b) of this section, or delivery of all material disclosures, whichever occurs last. If the required notice and material disclosures are not delivered, the right to rescind shall expire 3 years after the occurrence giving rise to the right of rescission, or upon transfer of all of the consumer's interest in the property, or upon sale of the property, whichever occurs first</u>. In the case of certain administrative proceedings, the rescission period shall be extended in accordance with section 125(f) of the Act.

(4) When more than one consumer has the right to rescind, the exercise of the right by one consumer shall be effective as to all consumers.

(b) *Notice of right to rescind*. In any transaction or occurrence subject to rescission, a creditor shall deliver two copies of the notice of the right to rescind to each consumer entitled to rescind (one copy to each if the notice is delivered in electronic form in accordance with the consumer consent and other applicable provisions of the E-Sign Act). The notice shall identify the transaction or occurrence and clearly and conspicuously disclose the following:

(1) The retention or acquisition of a security interest in the consumer's principal dwelling.

(2) The consumer's right to rescind, as described in paragraph (a)(1) of this section.

(3) How to exercise the right to rescind, with a form for that purpose, designating the address of the creditor's place of business.

(4) The effects of rescission, as described in paragraph (d) of this section.

(5) The date the rescission period expires.

12 C.F.R. § 226.15(a), (b) (emphasis added, footnote omitted).

On March 1, 2006, Bray signed a "Notice of Right to Cancel," that informed him of his right to cancel the transaction within three business days and how to exercise that right. See Docket No. 144-2, p. 28. He also signed a "Notice to Borrower(s) Required by Federal Law and Federal Reserve Board Regulation Z" on March 1, 2006. See Docket No. 144-2, p. 29. On June 9, 2009, Bray signed an "Affidavit Notice of Right to Cancel" purporting to exercise his right of rescission under the Truth in Lending Act. See Docket No. 1-7. The Court finds as a matter of law that the period during which Bray could exercise his right of rescission ended on March 4, 2006. Accordingly, Bray's attempt to exercise that right of rescission in 2009 is ineffective.

### F.    ULTRA VIRES

Bray argues that the Bank of America has acted ultra vires because it has no power to lend credit. This argument is devoid of merit. Bray obtained his loan from America's Home Loans, not Bank of America. In addition, America's Home Loans did not lend its credit, it lent Bray $ 220,000. The money was admittedly used to pay various debts owed by Bray as well as Bray's living

16

expenses.  Bray has submitted no evidence that either Bank of America or the other Defendants have acted ultra vires.


### G.   RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT AND USURY

Bray argues the Defendants have violated the Racketeer Influence and Corrupt Organizations Act ("RICO") by collecting an unlawful debt.  RICO defines an unlawful debt as:

> a debt (A) incurred or contracted in gambling activity which was in violation of the law of the United States, a State or political subdivision thereof, or which is unenforceable under State or Federal law in whole or in part as to principal or interest because of the laws relating to usury, and (B) which was incurred in connection with the business of gambling in violation of the law of the United States, a State or political subdivision thereof, or the business of lending money or a thing of value at a rate usurious under State or Federal law, where the usurious rate is at least twice the enforceable rate.

18 U.S.C. § 1961(6).  The Court finds as a matter of law that the loan in question is not connected to any gambling activity and none of the Defendants are charging a usurious interest rate.  Bray's arguments regarding RICO violations and usury are without merit and lack any support in current statutory law or case law.


### H.   FRAUD

Bray's contention that the Defendants have committed fraud is related to his erroneous belief that he was loaned "credit" and not "money."  The Court finds that Bray's claims of fraud are devoid of merit.  Further, such an argument lacks any support in current statutory law or case law.

I.   **ACQUIESCENCE**

Bray further contends that the Defendants have acquiesced to his statements of fact and law. For example, he states, "By their failure to act upon Bray's request for verification the Defendants have **tacitly agreed** that the alleged debt has been discharged by operation of law." See Docket No. 33, p. 5 (emphasis in original).  Bray has also asserted:

> **FAILURE** to verify and/or adequately assure the alleged debt owed by us within twenty (20) days as stated above, in accordance with said definitions, will be deemed a dishonor of this presentment/notice and demand, and that the debt collector and/or their client, has fraudulently attempted to assert a claim against me, and extort, induce money from us in the present and past, in which the debt collector and/or their client has and has had no legal right to, via the U.S. Mail.

See Docket No. 55, p. 16.  In his "Notice of Default to Writ of Stare Decisis," Bray contends:

> Since Defendants have failed to serve any verified rebuttal or objections to said Stare Decisis findings, Plaintiff has seen no record or evidence why Defendants do not mutually agree that the stipulated findings in said Stare Decisis should not conclusively show that MERS, INC. has no standing to sue Plaintiff, that this Court will consent to and abide by the findings of all said case laws, that said case laws are the bases of law by which this Court will abide and this Court agrees to be bound by said case law findings to execute the orders in favor or Plaintiff in this instant action.

See Docket No. 166.  Bray argues that the Defendants have failed to properly respond to his claims and statements within his self-imposed time limits and, therefore, they are barred from opposing his claims or pursuing their own claim in this litigation.

In essence, Bray is arguing that he has established estoppel by silence or acquiescence. Estoppel is codified in N.D.C.C. § 31-11-06, "When a party, by that party's own declaration, act, or omission, intentionally and deliberately has led another to believe a particular thing true and to act upon such belief, that party shall not be permitted to falsify it in any litigation arising out of such declaration, act, or omission."  The North Dakota Supreme Court has explained, "For an estoppel to arise from silence, the silence must be accompanied by a duty to speak out, reasonable reliance

18

on the silence, and resulting prejudice." Muhammed v. Welch, 2004 ND 46, ¶ 20, 675 N.W.2d 402

(citing Ray Co., Inc. v. Johnson, 325 N.W.2d 250, 254 (N.D. 1982); Baird v. Stephan, 204 N.W.

188, 195 (1925); Branthover v. Monarch Elevator Co., 156 N.W. 927, 929 (1916)).

The Court finds that the Defendants have responded in a timely manner to Bray's statements

and arguments as required by the governing Federal Rules of Civil Procedure and Magistrate Judge

Charles S. Miller, Jr.'s pretrial orders.  Any reliance on the Defendants' failure to respond to Bray's

self-imposed time limits is unreasonable.  In addition, Bray has not demonstrated how he was

prejudiced by relying on the Defendants' silence or failure to respond.  Bray's argument that the

Defendants are estopped from taking any position or making any argument because of their silence

or acquiescence is devoid of merit and lacks any support in current statutory law or case law.


### J.   REAL ESTATE SETTLEMENT PROCEDURES ACT

Bray next contends the Defendants violated the Real Estate Settlement Procedures Act by

failing to sufficiently respond to his communications.  This Act provides, in part:

(e) Duty of loan servicer to respond to borrower inquiries.

(1) Notice of receipt of inquiry.

(A) In general. If any servicer of a federally related mortgage loan
receives a qualified written request from the borrower (or an agent of
the borrower) for information relating to the servicing of such loan,
the servicer shall provide a written response acknowledging receipt
of the correspondence within 20 days (excluding legal public
holidays, Saturdays, and Sundays) unless the action requested is
taken within such period.

(B) Qualified written request. For purposes of this subsection, a
qualified written request shall be a written correspondence, other than
notice on a payment coupon or other payment medium supplied by
the servicer, that–

> (i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and
>
> (ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower.

12 U.S.C. § 2605(e)(1) (emphasis added).  The statute defines "servicing":

> The term "servicing" means receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan, including amounts for escrow accounts, . . . and making the payments of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan.

12 U.S.C. § 2605(i)(3).

The ongoing communications sent to the Defendants challenge the validity of the loan and accuse the Defendants of various statutory violations, but none of the communications relate to the servicing of the loan as that term is defined by statute.   Accordingly, Bray's claim that the Defendants violated the Real Estate Settlement Procedures Act is without merit.  See MorEquity v. Naeem, 118 F. Supp. 2d 885, 901 (N.D. Ill. 2000) (dismissing a RESPA claim because the counterclaimants' communications did not relate to "servicing" of the loan).


### K.    ALLODIAL TITLE

Bray also contends in his complaint, "As a property owner in Burleigh county, I, Thomas-Herbert:Bray, purchased the subject property in Burleigh county, North Dakota. **This land is now my private property to which I have allodial title, which means absolute ownership.** I own the property in allodium and in ***"Diominium Directum Et Utile"*** . . . ."  See Docket No. 1-4, p. 15 (errors and emphasis in original).  He explains further:

> [T]itles in all of the several states of the united States of America are <u>purely allodial</u>. My allodial title means that I am not a vassal, serf or indentured servant. The Defendant, BANK OF AMERICA, does not have a lawful claim to my home and land. The Defendant, BANK OF AMERICA, does not have a higher title than I do, or any right, title or interest in my real property except perhaps by fraud, which is void ab initio, since fraud vitiates everything. Similarly, AMERICAN HOME LOANS LLC, MERS INC., and COUNTRYWIDE HOME LOANS do not have any right, title or interest in my land.

<u>See</u> Docket No. 1-5, p. 33 (errors, capitals, and emphasis in original). The United States District Court for the District of Oregon has described "allodial title" as "an archaic concept not recognized in modern United States law." <u>United States v. Miljus</u>, No. 06-1832-PK, 2007 U.S. Dist. LEXIS 89701, at *4 (D. Or. Dec. 7, 2007). Bray's argument that the Defendants have no interest in the property in question because he owns "allodial title" is devoid of merit and such an argument lacks any support in modern statutory law or case law from around the country.

## L.   BRAY'S "REQUEST FOR THIRTY (30) DAY EXTENSION FOR PURPOSE OF GETTING EXPERT WITNESS AFFIDAVIT/TESTIMONY"

On September 1, 2010, Bray filed a "Request for Thirty (30) Day Extension for Purpose of Getting Expert Witness Affidavit/Testimony." <u>See</u> Docket No. 140. In the "Scheduling/Discovery Order" issued by Magistrate Judge Miller on January 29, 2010, the parties were given until August 1, 2010, to provide the names and reports of all expert witnesses. <u>See</u> Docket No. 23. The Court in its discretion will not grant this late request. Bray's "Request for Thirty(30) Day Extension for Purpose of Getting Expert Witness Affidavit/Testimony" is denied.

IV.     **CONCLUSION**

The Court has carefully reviewed the parties' motions, relevant case law and statutes, and the entire record.  For the reasons described above, Bray's following motions are **DENIED**:

• Motion for Summary Judgment (Docket No. 34)

• "Motion to Cease & Desist with Intent to Sue & Affidavit in Support of in Response to Counterclaim of MERS as a Nominee of America's Home Loans LLC, it's Successors & Assigns, Including Bank of America & Countrywide Home Loans" (Docket No. 55)

• "Verified Motion for Summary Judgment Brief Included" (Docket No. 60)

• "Motion to Find Judgment in Favor of Plaintiff Based on Fraudulent Contract" (Docket No. 61)

• "Amended Verified Motion for Summary Judgment Brief Included" (Docket No. 71)

• "Verified Motion to Find Summary Judgment in Favor of Plaintiff Based on Ultra Vires, TILA, RESPA, RICO, Usury Laws, & Federal Reserve Regulation Z Violations" (Docket No. 72)

• "Amended: Motion to Find Judgment in Favor of Plaintiff Based on Fraudulent Contract" (Docket No. 77)

• Amended Motion for Summary Judgment (Docket No. 81)

• "Request for Thirty (30) Day Extension for Purpose of Getting Expert Witness Affidavit/Testimony" (Docket No. 140)

The Defendants' "Motion for Summary Judgment Dismissing Plaintiff's Claims" (Docket No. 141) and "Motion for Summary Judgment on Counterclaim" (Docket No. 142) are **GRANTED**.  The

Court **DENIES** as moot the Plaintiff's "Writ for Information Based on Freedom of Information Act"

(Docket No. 175).

> **IT IS SO ORDERED.**

Dated this 5th day of January, 2011

*/s/ Daniel L. Hovland*_____
Daniel L. Hovland, District Judge
United States District Court

23